In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Successor Trustee under the Will of CHARLES J. COULTER, Deceased.

Surrogate's Court, New York County, March 30, 1953.

*David Kelly* and *Gilbert Frei* for successor trustee, petitioner.

*William T. Griffin* for Charles J. Coulter, individually and as executor of Elizabeth K. Coulter, deceased, and others, respondents.

*Harold Berger,* special guardian for Judith L. Coulter and others, infants, respondents.

COLLINS, S. The accounting trustee asks instructions on allocating, as between principal and income, the discount upon the redemption of United States Savings Bonds, Series G. In 1941, and 1942, the trustee made two purchases of Series G bonds, each in the sum of $50,000. The bonds were due, respectively, October 1, 1953, and January 1, 1954. In September, 1950, the trustee determined to redeem some of the bonds in order to take advantage of the authority granted to trustees by section 21 of the Personal Property Law, as amended by chapter 464 of the Laws of 1950. Bonds of the face value of $73,500 were redeemed for $71,295. The trustee asks whether the discount of $2,205 is to be charged to principal or income.

United States savings bonds " may be issued on an interest-bearing basis, on a discount basis, or on a combination interest-bearing and discount basis * * *. Such bonds * * * may be sold at such price or prices, and redeemed before maturity upon such terms and conditions as the Secretary of the Treasury may prescribe." (U. S. Code, tit. 31, § 757c, subd. [b], par. [1].)

The allocation of the increment of the new discount Savings Bonds presented a problem which required a balancing of the established discount rule and the new method of paying interest. (See, Forer, " Discounts in Trust Investments ", 24 Minn. L. Rev. 201, 211 *et seq.*; 55 Harv. L. Rev. 884; 2 Scott on Trusts, Supp., § 233.1; Restatement, Trusts, 1948 Supp., § 233.) Recognition was given to the fact that though " in form such securities produce no income, in reality the income is the amount of the discount ". (Restatement, Trusts, *supra.*) In many States legislative recognition of the true nature of the increment resulted in a statutory rule. (Personal Property Law, § 17-d; for statutes in other States, see Scott on Trusts, *supra.*)

In respect of the interest-bearing savings bonds, there must be the same balancing of the old rule and the true nature of the discount suffered through early redemption. It is alleged in the petition that these particular Series G Bonds were purchased under terms specified in a Treasury Department Circular which read: " Bonds of Series G will be issued at par, and will bear interest at the rate of 2½ percent per annum, payable semi-annually from issue date. Interest will be paid by check drawn to the order of the registered owner. Interest will cease at maturity, or, in case of redemption before maturity, at the end of the interest period next preceding the date of redemption. A table of redemption values appears on each bond, and *the difference* between the face amount of the bond and the redemption value fixed for any period *represents an adjustment (or refund) of interest.* Accordingly, if the owner exercises his option to redeem a bond prior to maturity, the investment yield will be less than the interest rate on the bond." (Emphasis supplied.) Treasury Department Regulations speak of the decrease in redemption value as representing " an adjustment of interest for the rate appropriate for the shorter term ". (U. S. Treasury Dept. Circular No. 530, 7th Revision, § 315.21.)

The interest-bearing savings bonds were not designed for short-term investment. Purchasers were put on notice that short-term loans would carry a different rate of interest than one for the full term. Obviously it would be an impossible task for the Government to pay a different rate of interest on each

bond at each interest day. Necessary adjustments, if any, were to be made at the time of redemption. This trustee was advised before purchasing the bonds that if they were not held for the full term, an adjustment of the interest rate would be made in accordance with a table printed on the bond, and it concedes that the contract was made on that basis.

The trustee states that at the time of purchase it had no intention of redeeming the bonds prior to maturity. Its change of plan resulted from circumstances not then foreseeable. It argues that there would be no practicable or possible method of adjusting income semiannually, except by withholding from the beneficiary the amount of discount specified for each interest date. This would result, it is said, in a small return to the beneficiary initially and a steadily increasing payment up to the time of maturity rather than a constant return over the life of the bond. It is claimed that the necessity of making adjustments would render the savings bonds unattractive as trust investments, unattractive to beneficiaries because of the fluctuations of true income and to trustees because of the burden of work cast upon them.

A trustee making any investment takes into account all of the advantages and disadvantages of a selected security. The very factors that make an investment desirable for one trust might make it improper for another. One purchasing interest-bearing savings bonds will normally do so only if reasonably certain that it can retain them without loss in redemption value. Where such an investment is advantageous for the trust, a practicable plan can be worked out by the trustee for the protection of income and principal. The hardship on beneficiaries by relatively small fluctuations in income and the weight of labor cast upon trustees on account of the possibility of adjustments of income are not such real difficulties as would justify casting on principal an adjustment that is truly one of income.

The court holds, therefore, that the difference between the face value of each bond and the redemption value represents an adjustment of interest to the rate appropriate for the shorter term and that such amount is chargeable against income and not against principal.

After determination of the issues raised by the objections, a decree may be submitted instructing the trustee accordingly.