In the Matter of the Accounting of BANKERS TRUST COMPANY, as Trustee of Legal Common Trust Fund B.

Surrogate's Court, New York County, March 11, 1955.

*Webster Sandford* for trustee, petitioner.

*Charles Tolleris,* special guardian.

*Jules K. Lindenburg,* special guardian.

FRANKENTHALER, S. The account of the trustee of the common trust fund reflects the redemption of United States Savings Bonds, Series G, the receipt of less than the face value thereof, and the allocation of the loss to the principal account. The special guardian who represents beneficiaries interested only in principal, objects to this charge, contending that the loss should be charged wholly against income.

The Banking Board is authorized to regulate the conduct and management of any common trust fund, to determine the procedure to be followed in adding moneys or investments to the fund or withdrawing them therefrom and to prescribe the methods and standards to be employed in determining the value of the common fund and of its assets and investments. (Bank-

ing Law, § 14, subd. 1, par. [c.].) The regulations adopted pursuant to this authority, provide that in valuing investments, obligations of the United States " which may be redeemable at less than par prior to maturity or which are not salable without exchange shall be valued at par." (Art. 5 subd. 2, par. a, cl. [1], N. Y. Official Compilation of Codes, Rules & Regulations [1952], p. 88.) The regulations direct that the apportionment of the income of any common trust fund shall be determined at each valuation date and that such income must be distributed to participating estates not less frequently than quarter-annually. (Art. 6, subd. 2.) To facilitate the distribution of income accrued but not yet collected, cash principal may be used to purchase accrued income. (Art. 6, subd. 2.)

The statute governing the administration of common trust funds requires valuation of the fund quarter-annually. It provides that the valuation shall be made pursuant to the regulations of the Banking Board and that any valuation made in accordance with the statute and the regulations, if made in good faith, " shall fully protect such trust company and shall not be questioned upon the settlement of any account relating to such fund ". (Banking Law, § 100-c, subd. 8.)

Both statute and regulations recognize the necessity of definitive allocations of income at regular intervals and final and conclusive valuations of income and principal, so that estates and trusts which are admitted to the common fund or which withdraw therefrom on any valuation date may have their interests in income and principal finally fixed and determined.

The Banking Board regulations require the submission of a plan of operation before permission to operate a common fund shall be granted. The plan of operation of the fund now accounted for provides for valuation of the fund on the last business day of each January, April, July and October. No admission to or withdrawal from the common fund is permitted except on the basis of the principal and income unit value determined as therein prescribed. The income value per unit of participation is determined by ascertaining the income held or accrued and remaining undistributed as of the valuation date, deducting therefrom all expenses and liabilities chargeable to income, and dividing the net income as thus determined by the number of existing units. With respect to the valuation of securities, the plan of operation provides that " United States Savings Bonds, Series G, shall be valued at par." (Art. 7, § 4.) With respect to allocations to principal and income, it reads:

" Premiums paid on the purchase of investments for the Common Fund shall not be amortized." (Art. 8.)

In *Matter of Bank of N. Y.* (189 Misc. 459) Surrogate DELEHANTY discussed the nature of a common trust fund and the necessity for the application of rules of administration which will permit it to achieve the purpose for which it was created by the Legislature. The Surrogate there adverted to arguments that one rule of administration or another might in one instance or another give advantage to one participant or might prejudice another. The particular question then before the court related to the allocation of expenses of the accounting, but the observations of the Surrogate are equally pertinent to the present issue. He said: " Perhaps such instances will occur. If they do occur they are a necessary incident to the operation of the fund as an entity. It would be impracticable to attempt to allocate the charges by relating them to the individual participations and the periods of time during which each investor had a participation. As a practical matter the fund could not be operated under such conditions. The Legislature must be deemed to have so understood. If there be adventitious benefit to some participant it would be unimportant in the long run. In the case of a fund as large as the one here accounted for the costs of administration are relatively negligible. The impact of such costs when translated into individual units is trivial. The fund is a means of investment which must be operated on a practical basis or not at all. For many reasons the court holds that the time of charge is the time of the decree settling the account. To choose any other date would complicate the operation of the fund, would suspend the final valuation of withdrawn participations or new participations and would impose upon the manager of the fund bookkeeping and accounting problems which would make the fund unworkable." (P. 464.)

In that decision the court explicitly approved the rule dispensing with amortization of premiums on investments and also the valuation of the Series G bonds at par. With respect to the dispensation from amortization, the Surrogate said (p. 465–466): " The court notes the argument of the special guardian for principal account which is based upon his contention that the realized decreases in capital assets of the fund has resulted almost entirely from redemption of bonds purchased at a premium. Such losses from redemptions are in part absorbed by capital gains and the existence of both aspects of possible fluctuation in principal value points up the need for treating the

fund as an entity which takes its gains and absorbs its losses. The court is in agreement with a commentator who said in relation to a common trust fund: ' In such a fund, comprising a great many bonds bought at varying prices, discounts and premiums tend approximately to cancel out over a reasonably short period. To require amortization, moreover, would seriously (and unnecessarily if '' cancelling-out '' occurs) complicate the already sufficiently complex accounting of a common trust fund.' (37 Col. L. Rev. 1384, 1391.) ''.

This court is in agreement with the views there expressed. The dispensation from amortization is a reasonable regulation. The rules for final and definitive allocations as between principal and income, for binding and conclusive valuations of principal and income units of participation and for final discharge of all obligations to income beneficiaries at regular intervals are reasonably necessary for the administration of such a large common fund. A requirement for the creation of an income reserve over the entire period that each separate bond is outstanding, would complicate the administration of the fund to the point where the costs of operation would destroy the usefulness of the fund.

*Matter of Coulter* (204 Misc. 473) is not authority to the contrary. That case involved a testamentary trust, not a common trust fund. Moreover, the testator there died many years before the enactment of section 17-d of the Personal Property Law, and no mandate against apportionment was considered. In addition, the court considered the practical application of the rule to the administration of the trust under that will.

The objections of the special guardian are overruled and the allocation to principal of the amount of the depreciation, is approved.

The compensation of the attorneys for the petitioner has been fixed.

Submit decree on notice settling the account accordingly.